THOMSON ET AL. *v.* OHIC INSURANCE COMPANY, APPELLEE; WATKINS ET AL., APPELLANTS.

[Cite as *Thomson v. OHIC Ins. Co.,*
103 Ohio St.3d 119, 2004-Ohio-4775.]

(No. 2003–0067—Submitted December 16, 2003—Decided September 22, 2004.)

LUNDBERG STRATTON, J.

{¶ 1} Plaintiffs, James Thomson, D.O., and Camden Medical Building, Inc., filed a complaint for declaratory judgment pursuant to Civ.R. 57 and R.C. 2921.01 asking the court to interpret a professional-services liability insurance policy issued by defendant-appellee OHIC Insurance Company and to declare the rights and status of the parties, including those of defendants-appellants, John Watkins, his wife, Sherri Watkins, and minor son, Sean. The Watkins family members were plaintiffs in an underlying action pending in the Butler County Court of Common Pleas that alleged medical malpractice against Dr. Thomson.

{¶ 2} The parties submitted written briefs to the trial court based on the following stipulated facts. Thomson and Camden were insured under a profes-

sional-services liability insurance policy issued by appellee OHIC Insurance Company, effective April 1, 1997, to April 1, 1998, which was annually renewed thereafter. It was a "claims made" policy with shared limits of $1,000,000 "Each Person" and $3,000,000 total for claims made during each policy year.

{¶ 3} From April 28, 1999, through July 8, 1999, approximately, Dr. Thomson provided "professional services" as defined by the policy to John Watkins. He did not provide professional services to either Sherri Watkins or Sean. On June 4, 1999, John Watkins suffered injuries allegedly as a result of Dr. Thomson's negligence. The Watkins family filed a complaint for medical malpractice that also alleged claims of loss of consortium by Sherri Watkins and Sean.

{¶ 4} The OHIC policy obligated OHIC as insurer to pay claims for which Thomson and Camden became legally obligated. To be covered under the policy, a claim must involve an allegation of injury or death to a person because of professional services provided by the insured. The policy expressly required any derivative claims to share in the "Each Person" limit of coverage.

{¶ 5} Thomson, Camden, and the Watkins family argued that the restriction of coverage for derivative claims to the "Each Person" limits was unenforceable pursuant to *Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 668 N.E.2d 913. *Schaefer*, an uninsured motorist case, held: "Each person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person policy limit. A provision in an insurance policy which reaches a contrary result is unenforceable." Id. at syllabus. Thomson, Camden, and the Watkins family asked the trial court to apply *Schaefer* and declare that the negligence and loss-of-consortium claims of the Watkins family members in the underlying medical-malpractice action were separately covered, subject to separate "Each Person" limits under the policy.[1]

{¶ 6} OHIC argued that *Schaefer* had been legislatively overruled in 1994 by R.C. 3937.44.[2] OHIC urged the court to enforce the "Each Person" limit of liability in the policy.

---

1. The complaint also asked the court to declare whether Thomson and Camden were entitled to separate coverages and whether any wrongful-death claim that might arise out of the injuries would be considered separate from the claim for bodily injury. We do not address the merits of these issues, which are not before us.

2. R.C. 3937.44 provides: "Any liability policy of insurance including, but not limited to, automobile liability or motor vehicle liability insurance that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one accident, may, notwithstanding Chapter 2125 of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained

{¶ 7} The trial court concluded that R.C. 3937.44 did not apply to insurance policies involving medical negligence or professional services. Therefore, the court applied *Schaefer* and held that each person asserting a claim for loss of consortium under the OHIC policy had a separate claim that was subject to a separate "Each Person" limit of coverage.

{¶ 8} The court of appeals reversed and upheld the policy's limitation of coverage pursuant to R.C. 3937.44. The Watkins family members filed a notice of appeal from the appellate court's judgment. The cause is before this court upon the acceptance of a discretionary appeal.

{¶ 9} Appellants' single proposition of law asks us to apply *Schaefer* to a professional-liability or medical-malpractice insurance policy so that each person who asserts a derivative claim has a separate claim subject to a separate per-person policy limitation of liability.

{¶ 10} *Schaefer* was an underinsured motorist case in which the plaintiffs asserted claims for personal injury and loss of consortium. The Schaefers' automobile liability policy required that their loss-of-consortium claims share the per-person limit for bodily injury claims. Relying on *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, the *Schaefer* court refused to enforce that limitation. The first paragraph of the syllabus in *Savoie* held: "Each person who is presumed to have been damaged as a result of a wrongful death claim may, to the extent of his or her damages, collect from the tortfeasor's liability policy up to its per person limits subject to any per accident limit. Liability policy provisions which purport to consolidate wrongful death damages suffered by individuals into one 'each person' policy limit are unenforceable." Id. at paragraph one of the syllabus. Comparing the *Schaefer* consortium claims to wrongful-death claims in *Savoie,* the court in *Schaefer* concluded that each consortium claim constituted a separate compensable injury subject to its own per-person limit.

{¶ 11} We limited the reach of the first paragraph of the *Savoie* syllabus in *Katz v. Ohio Ins. Guar. Assn.,* 103 Ohio St.3d 4, 2004-Ohio-4109, 812 N.E.2d 1266. *Katz* involved a medical-malpractice or professional-services liability insurance policy that expressly limited the insurer's liability for all damages based on the death of any one person to the limits of liability for "each claim." The appellees in *Katz* argued that the reasoning in *Savoie* should apply to the professional-services policy to invalidate its similar limitation of liability. We acknowledged *Savoie*'s application in the context of automobile insurance; however, we refused

by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."

to extend its rationale to professional-services or medical-malpractice insurance policies.

{¶ 12} Because *Schaefer* was decided upon the reasoning of *Savoie* and *Savoie* has been limited to automobile insurance cases, we conclude that *Schaefer* is likewise limited and provides no basis for invalidating this contract provision. *Schaefer* also involved claims made pursuant to an automobile liability policy, and the cases that *Schaefer* overruled or limited involved automobile liability policies, specifically uninsured/underinsured motorist insurance. Consequently, we conclude that *Schaefer* does not extend beyond the context of automobile liability insurance polices. Therefore, we need not determine whether R.C. 3937.44 applies to malpractice insurance.

{¶ 13} Because we have determined that *Schaefer* does not apply, this case becomes a case of contract interpretation. We begin by examining the plain language of the insurance contract.

{¶ 14} According to the terms of the policy, OHIC agreed to pay "claims" that the insured becomes legally obligated to pay because of "professional services" that were or should have been provided. A "claim" must involve an allegation of injury or death to a person because of "professional services."

{¶ 15} The provision at issue, Section IV—Limits of Coverage, consolidates derivative claims:

{¶ 16} "The Each Person Limit is the most we will pay for all 'claims' arising out of 'professional services' provided or which should have been provided:

{¶ 17} "a. to any person; or

{¶ 18} "b. to a mother and her child or children during pregnancy or in the course of delivery.

{¶ 19} "Any derivative 'claims' share in the Each Person Limit."

{¶ 20} In this case, the parties stipulated that the Watkins family members are seeking damages in the underlying action as a result of alleged negligent "professional services" that Dr. Thomson provided John Watkins and stipulated that Dr. Thomson did not provide professional services to Sherri Watkins or Sean. John Watkins has a "claim," as defined in the policy, which Dr. Thomson may become legally obligated to pay. Sherri Watkins and Sean, however, have asserted loss-of-consortium claims that are derived from John Watkins's negligence claim. Section IV of the OHIC policy clearly and unambiguously requires that derivative claims of appellants Sherri and Sean Watkins share in the "Each Person" limit of coverage applicable to John Watkins's claim for medical malpractice. The plain language of the contract controls.

{¶ 21} Therefore, we hold that Sherri and Sean Watkins are not entitled to separate per-person limits of coverage for their loss-of-consortium claims. We affirm the judgment of the court of appeals, albeit on different grounds.

Judgment affirmed.

MOYER, C.J., O'CONNOR and O'DONNELL, JJ., concur.

RESNICK, J., dissents.

F.E. SWEENEY and PFEIFER, JJ., dissent.

———————

**PFEIFER, J., dissenting.**

{¶ 22} The majority misapplies *Katz v. Ohio Ins. Guar. Assn.*, 103 Ohio St.3d 4, 2004-Ohio-4109, 812 N.E.2d 1266, a wrongful-death case wrongfully decided. I dissented from the portion of *Katz* that held that wrongful-death plaintiffs in medical-malpractice cases should be treated differently from those in automobile-accident cases. Wrongful-death plaintiffs are statutorily presumed to have suffered their own injuries, without regard to how the decedent died. Nothing in the wrongful-death statutes makes any distinction about treating survivors differently based solely on the manner of the decedent's death. *Katz* was wrongly decided on that issue. Extending that reasoning in order to negate this court's holding in *Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 668 N.E.2d 913, only compounds the *Katz* mistake.

{¶ 23} This case should have been decided upon an analysis of R.C. 3937.44 and whether it applies to medical-malpractice cases. That statute clearly was written to apply to automobile liability policies. It appears in the Revised Code in between a section regarding automobile insurance premium reductions for insureds aged 60 and over and a section stating that insurers may not use motor vehicle weight violations to affect premium rates. That is not an area of the code where one would expect to find guidance regarding limitations on medical-malpractice claims. The language of R.C. 3937.44 removes all doubt:

{¶ 24} "Any liability policy of insurance including, but not limited to, automobile liability or motor vehicle liability insurance that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one accident, may, notwithstanding Chapter 2125 of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the

number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."

{¶ 25} Granted, part of the statute could be read to apply to more than just automobile liability policies: "Any liability policy of insurance * * * may, notwithstanding Chapter 2125 of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim." The statute's second sentence, however, clarifies that it applies to claims arising from accidents: "Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved *in the accident*." (Emphasis added.) R.C. Chapter 3937 presupposes an accident.

{¶ 26} Thus, this court should have considered whether malpractice constitutes an accident for purposes of the statute. In its definition of malpractice insurance, R.C. 3929.71 does not refer to accidents: " 'Medical malpractice insurance' means insurance coverage against the legal liability of the insured and against loss, damage, or expense incident to a claim arising out of the death, disease, or injury of any person as the result of negligence or malpractice in rendering professional service by any licensed physician * * *."

{¶ 27} While "accident" connotes an event, malpractice can encompass inactivity, or a series of decisions that over time leads to an injury. Should we treat each instance in a misdiagnosed patient's care as a separate accidental event subject to redress? Or is malpractice not to be shoehorned into other tort areas involving a specific, pinpointable wrong?

{¶ 28} I would not include malpractice in the tort category of accidents and would thus have found R.C. 3937.44 inapplicable to this case.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.

———

Law Office of Scott J. Frederick, L.L.C., and Scott J. Frederick; and Gardner, Ewing & Souza and David Ewing, for appellants.

Hammond & Sewards and Gary W. Hammond, for appellee OHIC Insurance Company.

Smith, Phillips & Assoc. and Janet L. Phillips, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

Bricker & Eckler, L.L.P., Catherine M. Ballard and Anne Marie Sferra, urging affirmance for amici curiae Ohio Hospital Association and Ohio State Medical Association.