This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 DECISION AND JOURNAL ENTRY
Plaintiff Donco Izev has appealed from an order of the Medina County Court of Common Pleas granting summary judgment in favor of Nationwide Mutual Insurance Company. This Court affirms.
 I.
Donco and Zaga Izev are husband and wife. On November 25, 1995, the couple renewed their Nationwide automobile insurance policy with Nationwide Mutual Insurance Company (Nationwide). The policy provided underinsured motorist coverage with limits of fifty thousand dollars per person and one hundred thousand per accident. On December 17, 1995, Mrs. Izev was injured due to the negligence of an underinsured motorist. With Nationwide's consent, Mrs. Izev recovered from the tortfeasor the limits of that individual's available liability coverage, specifically twenty-five thousand dollars. Nationwide then credited that amount to the fifty thousand per person limit under the underinsured motorist provision of the policy. Nationwide also paid an additional twenty-five thousand to Mrs. Izev to fulfill the policy's limits.
On July 23, 1997, Mr. and Mrs. Izev filed a complaint for declaratory judgment, alleging that, although Mrs. Izev had been compensated for her injuries to the full extent of her underinsured motorist coverage, Mr. Izev was entitled to a separate per person limit of underinsured motorist coverage for his derivative claim for loss of consortium. In its answer, Nationwide admitted all the material facts as alleged in the complaint. Both parties filed motions for summary judgment and on May 7, 1998, the trial court granted summary judgment in favor of Nationwide. The court found that the Izev's policy and R.C.3937.18(H), as amended effective October 20, 1994, precluded Mr. Izev's claim for separate underinsured motorist limits to cover his alleged loss of consortium claim. Mr. Izev timely appealed, asserting three assignments of error.
 II.
In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. In this case, the facts are undisputed. Thus, while this Court's review is de novo, only the trial court's application of the law remains at issue.
 A.
Assignment of Error One
 The trial court's finding that R.C. 3937.18(H), as enacted on Ocober 20, 1994, is applicable to loss of consortium claims is in error as it denies [Mr. Izev] a meaningful remedy as contemplated by Article I, Section 16 of the Ohio Constitution.
Assignment of Error Two
 The trial court erred in finding that the limits of payment set forth in [Nationwide's] Century II Auto Policy are valid and unambiguous.
While Mr. Izev has attempted to argue the merits of these assertions, this Court declines to address them because he failed to raise them at the trial court level. As a general rule, appellate courts will not consider any error which counsel for a party complaining of the trial court's judgment could have called to the attention of the trial court, but did not. State v.Campbell (1994), 69 Ohio St.3d 38, 40, quoting State v. Childs
(1968), 14 Ohio St.2d 56, paragraph three of the syllabus. Indeed, it has been held that failure to raise and fully develop the issue of the constitutionality of a statute at the trial court level constitutes waiver. Howard v. Seidler (1996), 116 Ohio App.3d 800,815, citing State v. Smith (1991), 61 Ohio St.3d 284,293; Shanower v. Cook (1934), 47 Ohio App. 553, 556 ("The forum of a reviewing court is not a place where for the first time a point, which has not been deemed of essence at the trial, and which has not been seriously pressed to the attention of the court, may be brought to the front for the mere technical purpose of securing a reversal of a judgment * * * ").
As Nationwide has pointed out, Mr. Izev neither asserted his argument regarding the alleged ambiguity in the policy language at the trial court level, nor argued that R.C. 3937.18(H) lacked constitutional validity.[1] Although both claims were apparent, Mr. Izev failed to raise and develop either at the trial court level. These arguments, therefore, cannot be raised and developed on appeal for the first time. Thus, Mr. Izev's first and second assignments of error are overruled.
 B.
Assignment of Error Three
 Substantial justice has not been done to [Mr. Izev] and the case should be reversed as to the judgment of [the] Medina County Common Pleas Court and remanded for determination of the amount of coverage.
Mr. Izev has argued that the language of the underinsured motorist limits works an injustice and is, as a matter of law, unenforceable against him. He has asserted that a policy provision limiting an individual's claims and any derivative claims flowing therefrom to a single per person limit is illegal. The resolution of this assignment of error turns upon (1) the meaning of the policy language at issue, and (2) the statutory law governing Mr. Izev's policy on December 17, 1995. Because statutory law controls the interpretation of the policy, it will be addressed first.
1. The Controlling Statutory Law
The threshold question in any insurance policy interpretation case is what statutory law controls. In Ohio, the rights and duties of parties in an underinsured motorist claim are governed by the statutory law in effect on the date the parties entered into their contract for insurance. Ross v. Farmers Ins. Group ofCos. (1998), 82 Ohio St.3d 281, syllabus. When parties have entered into an initial contract for insurance and have later renewed that policy, "[s]tatutes pertaining to [the policy] and its coverage, which are enacted after the policy's issuance, are incorporated into any renewal of such policy if the renewal represents a new contract of insurance separate from the initial policy." Id., at 288-89, quoting Benson v. Rosler (1985), 19 Ohio St.3d 41,44. The policy in question was renewed, effective November 25, 1995. Thus, pursuant to Ross, the statutory law in effect on November 25, 1995 is determinative in this matter.
Mr. Izev has asserted that the Ohio Supreme Court's decision in Schaefer v. Allstate Ins. Co. (1996), 76 Ohio St.3d 553, is dispositive of the instant case. This Court disagrees. The syllabus law set forth in Schaefer[2] applies to cases prior to the General Assembly's amendment of R.C. 3937.18 by Am.Sub.S.B. 20. In other words, it interprets R.C. 3937.18 prior to the addition of subsection (H). Although the Shaefer decision was handed down in 1996, the language employed by the Schaefer court clearly demonstrates the law being applied was that of Savoie v.Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500. Schaefer, 76 Ohio St. 3
d at 557("[T]he logic of the decision in Savoie should now be applied to loss of consortium claims in personal injuries cases."). While Mr. Izev correctly states the law of Schaefer and its foundation, Savoie, the General Assembly legislatively overruled the syllabus law of Savoie when it passed Am.Sub.S.B. 20. Gibson v. State Farm Mut. Auto. Ins. Co. (1997), 123 Ohio App.3d 216,221. In its place, effective October 20, 1994, stood R.C. 3937.18(H). That subsection read as follows:
 Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125, of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.[3]
From this language, one can see that an insurance policy could legally restrict the policy limits for an individual's claim and all derivative claims flowing therefrom. See Nicolini-Brownfieldv. Eigensee (September 16, 1999), Franklin App. Nos. 98AP-1243 and 98AP-1244, unreported, 1999 Ohio App. LEXIS 4238, at *17. Even the Ohio Supreme Court noted that while under application ofSavoie, 67 Ohio St.3d at paragraph four of the syllabus, individuals each have a separate per person limit, the General Assembly's subsequent addition of R.C. 3937.18(H), effective October 20, 1994, suggests a different result. Holt v. GrangeMut. Cas. Co. (1997), 79 Ohio St.3d 401, 404, fn. 2. In light of this and the law set forth above, this Court holds that, under R.C. 3937.18(H), as amended on October 20, 1994, and as applied on November 25, 1995, underinsured motorist provisions limiting an individual's claims and all derivative claims flowing therefrom to a single per person limit are legal and enforceable.
Having determined that a single per person limit was enforceable on November 25, 1995, this Court now turns to whether the policy in question proscribed such a restriction.
2. The Policy
Because insurance policies are written contracts, their meaning must be determined in accordance with the same rules as other written contracts. Gomolka v. State Auto. Mutl. Ins. Co.
(1982), 70 Ohio St.2d 166, 167. Thus, when reviewing an insurance policy, words and phrases must be given their plain and ordinary meaning where possible. Id. at 167-68. To the extent that the language of an insurance policy is clear and unambiguous, it is unnecessary and impermissible for a court to resort to construction of that language. Id. at 168. The policy in question provides, in pertinent part:
LIMITS OF PAYMENT
 Amounts payable for uninsured [and underinsured] motorists losses.
 We agree to pay losses up to the limits stated in the policy declarations. The following applies to these limits:
 1. The bodily injury limit shown for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to bodily injury to one person as a result of one occurrence.
 The per-person limit is the total amount available when one person sustains bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims or any other claims made by anyone arising out of bodily injury, including death, to one person as a result of one occurrence. (Emphasis added.)
Mr. Izev has not pointed to any specific ambiguity in the above provision, nor has he offered any explanation of how any of the provisions are susceptible of more than one meaning. Where an insurer takes advantage of R.C. 3937.18(H) by including a provision in its policy which unambiguously states that all claims for damages arising out of the bodily injury of one person are collectively subject to the policy's per person limit of liability, this Court will not disturb such a result. In the end, this Court concludes that the Izev's policy plainly indicates that, where multiple claims arise out of a single injury, all of the derivative claims will be collectively subject to the applicable per person limit of liability. Such was permitted under the law in effect on November 25, 1995. Therefore, Mr. Izev's third assignment of error is overruled.
 III.
Mr. Izev's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ______________________________ BETH WHITMORE FOR THE COURT
SLABY, P.J., BATCHELDER, J., CONCUR.
[1] At page seven of Mr. Izev's Answer to Nationwide's Motion for Summary Judgement, Mr. Izev mentions the Ohio Constitution. However, this sole reference was an attack on the enforcement of policy provisions and notice, not the constitutional validity of R.C. 3937.18(H) as applied in this case.
[2] "Each person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person policy limit. A provision in an insurance policy which reaches a contrary result is unenforceable" Schaefer, 76 Ohio St.3d 553, syllabus.
[3] This Court notes that the General Assembly has once again amended R.C. 3937.18(H). Effective September 3, 1997, that section provides:
 Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section or selected in accordance with division (C) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125 of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
Nevertheless, pursuant to the holding in Ross,82 Ohio St.3d at 288-89, such language does not control the Izev's policy.